Marc Voisenat (CSB# 170935)
2329A Eagle Avenue
Alameda, Ca. 94501
Tel: (510) 263-8664
Fax: (510) 272-9158

Attorney for Debtor-in-Possession
Mag Auto Group, Inc.

**United States Bankruptcy Court**

**Northern District of California**

| | |
|---|---|
| In re:<br><br>Mag Auto Group, Inc.<br><br>Debtor-in-Possession | Case No.: 21-41536 WJL<br><br>Chapter 11<br><br>**STATUS CONFERENCE STATEMENT**<br><br>Date:   February 9, 2022<br>Time:   10:30 a.m.<br>Crtrm:  Tele\Video Conference |

**1.    NATURE OF OPERATIONS AND FACTORS LEADING TO BANKRUPTCY FILING;**

The debtor is in the business of selling used vehicles. The debtor does not have employees but does have people who work form him on a 1099 basis.

Generally, the debtor will finance the purchase of vehicles at auctions through floor planning companies. The lender will hold title until the debtor sells the vehicle, repays the lender and the debtor retains the profit. However, the debtor is limited in the number he can purchase through these floor planning companies.

When the debtor sells a vehicle, the debtor uses various lenders to provide its customers purchase money loans to purchase the vehicles.

Approximately two to three years ago, the debtor looked to expand its operation by

purchasing more vehicles.  Since the debtor was limited in the number of vehicles it could purchase through the flooring companies, the debtor began to borrow money using Merchant Cash Advances (MCA).  A MCA allows a creditor to get an upfront sum of cash that is repaid by remitting fixed daily debits from the debtor's bank account, known as ACH, for Automated Clearing House, withdrawals.

The debtor thought the company could increase its profits by purchasing more vehicles using these MCAS.  However, when the COVID-19 pandemic hit, business slowed down, and the debtor's profits quickly declined.  However, the MCAS continued to draw money from the debtor's account on a daily basis which caused cash flow problems.  In order to keep up with the interest payments, the debtor took out more and more MCAS.

Eventually, the MCA'S ability to take cash out on a daily basis caused the debtor to default on its floor planning loans.  This caused certain creditors to send demands to the debtor's lenders which then caused the lenders to stop making purchase money loans to the debtor's customers.  As such, the debtor can only sell to cash buyers.  Some creditors began to repossess their vehicles.  The debtor could only stop the daily withdraws and repossession by filing the above bankruptcy case.

**2.     PROPOSED SCHEDULE FOR FILING AND CONFIMING PROPOSED PLAN**

Currently, the debtor is contemplating liquidation rather than reorganization.  The debtor has been approached by a potential buyer to take over the business.  The proposed terms are being negotiated.  Since the debtor is not fully operational yet, it is difficult to determine when a proposed plan could be filed if the debtor decides not to sell.

The debtors would request the status conference be continued 60 days to see if the debtor sells the business or reorganize.

**3.     OUTLINE OF A PROPOSED PLAN**

The debtor may seek a restricted dismissal if acceptable terms can be reached for the sale of

the business.

4. **THE TYPE, STATUS AND ADEQUACY OF INSURANCE COVERAGE OF THE DEBTOR'S ASSET.**

The debtor has casualty insurance and general liability. The premiums are current.

5. **ESTATES NEED FOR PROFESSIONALS**

The debtor has filed an application to employ the undersigned as general counsel in this case. No other professional is anticipated at this time.

6. **THE DEBTOR'S POST- PETITION OPERATIONS, REVENUE AND FINANCIAL RESULT**

The debtor's post-petition operations have been impaired by the inability to get purchase money loans for its vehicles. Steps are being taken to remove any restrictions on the debtor's access to these purchase money lenders. The debtor is working with the flooring company who repossess the vehicles to return the vehicles and allow the debtor to sale them rather than having the lender auction off the vehicles.

7. **STATUS OF LITIGATION PENDING IF ANY**

There was a lawsuit filed by AJ Equity in the State of New York shortly before the above case was filed. That case is not at issue as to the estate. Notice of the bankruptcy was given to plaintiff's counsel. There is also pending a workers compensation claim that has been pending since 2019. The insurance company settled most of the claims, but the claimant filed a petition for wrongful determination but taken no action on that claim since February 2020. Counsel for debtor in that case states the case if currently off calendar.

8. **ATTENDANCE OF 341 MEETING AND COMPLIANCE WITH REQUEST FOR INFORMATION FROM UST MADE FOR IDI**

The debtor appeared at the IDI and meeting of creditors which was continued. The trustee made requests for certain documents most of which the debtor has supplied. However, there are other documents that the debtor is still in the process of gathering.

9. **STATUS OF MONTHLY OPERATING REPORTS, DEBTOR-IN-POSSESSION**

**ACCOUNT AND POST PETITION PAYMENT TO TAXING AUTHORITIES**

The debtor is current on the filing of the monthly operating report and has opened a DIP account. No post-petition payments to tax authorities have come due yet.

10. **WHETHER THE DEBTOR HAS MET THE REQUIREMENT OF USING CASH COLLATERAL AND OBTAINING CREDIT**

The debtor has contacted counsel for those creditors who have filed proof of claims and have begun discussions for the use of cash collateral. Tentative agreement has been reached with the creditor who seems to have the highest priority, NextGear Capital Inc. In the meantime, the debtor has been advised to sequester the funds.

10. **ORDERS ENTERED IN THE CASE GRANTING RELIEF FROM THE AUTOMATIC STAY, EXTENDING OR REFUSING TO EXTEND THE AUTOMATIC STAY OR DETERMINING THERE IS NO AUTOMATIC STAY IN EFFECT AS TO ANY OR ALL CREDITORS;**

No orders have been entered regarding the automatic stay.

11. **MOTIONS TO ASSUME OR REJECT ANY EXECUTORY CONTRACTS OR UNEXPIRED LEASES THAT HAVE BEEN OR ARE EXPECTED TO BE FILED;**

The debtor may file a motion to assume the business lease if the business does not sell.

12. **UNIQUE ISSUES CONCERNING SECURED DEBT, EMPLOYEES, CASH COLLATERAL, EXECUTORY CONTRACT, EXISTING MANAGEMENT**

None

13. **UNUSUAL DEVELOPMENTS OR EVENTS THAT HAVE OCCURRED OR ARE EXPECTED TO OCCUR IN THE CASE, AND ANY OTHER MATTERS THAT MIGHT MATERIALLY AFFECT THE ADMINISTRATION OF THIS CASE.**

The CDFTA has advised counsel that they are going the audit the debtor period is April 1, 2020 to December 31, 2021 which may result in an increase of tax liability.

Dated: February 2, 2022

/s/ Marc Voisenat
Marc Voisenat – Attorney for debtor